Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

**FILED**
**U.S. DISTRICT COURT**
**EASTERN DISTRICT ARKANSAS**

for the

Eastern District of Arkansas

**NOV 27 2023**

_Central_ Division

**TAMMY H. DOWNS, CLERK**

By:_____
                    **DEP CLERK**

|  |  |
|---|---|
| _____<br>_Plaintiff(s)_<br>(Write the full name of each plaintiff who is filing this complaint.<br>If the names of all the plaintiffs cannot fit in the space above,<br>please write "see attached" in the space and attach an additional<br>page with the full list of names.)<br>**-v-**<br><br>_____<br>_Defendant(s)_<br>(Write the full name of each defendant who is being sued. If the<br>names of all the defendants cannot fit in the space above, please<br>write "see attached" in the space and attach an additional page<br>with the full list of names.) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. ___4:23-cv-1121-BSM___
_(to be filled in by the Clerk's Office)_

Jury Trial: _(check one)_ ☐ Yes ☐ No

This case assigned to District Judge _Miller_
and to Magistrate Judge _Harris_

## COMPLAINT FOR A CIVIL CASE

**I.      The Parties to This Complaint**

**A.      The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Marsha Stanley |
| Street Address | 1416 Azalea Dr. |
| City and County | North Little Rock, Pulaski |
| State and Zip Code | Arkansas 72117 |
| Telephone Number | 501·551·4338 |
| E-mail Address | marchc1994@yahoo.Com |

**B.      The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title _(if known)_. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

|  |  |
|---|---|
| Name | Daniel Gaudreau |
| Job or Title *(if known)* | Chief financial officer |
| Street Address | P.O. Box 53097 |
| City and County | Phoenix |
| State and Zip Code | Arizona 85072 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

|  |  |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

|  |  |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

|  |  |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

**CREDIT CLAIM**

**I, Stanley, Marsha/Agent here on behalf of MARSHA STANLEY/Principal hereby accepts all title, rights, interest, and equity owed to the MARSHA STANLEY/Principal. I hereby instruct CFO or Indenture Trustee for Bridgecrest to apply the principal's balance to the principals account number #200058239901 each and every billing cycle. I hereby instruct the CFO or Indenture Trustee for Bridgecrest to respond in writing if these instructions cannot be completed. You have five business days. If I do not receive anything in five business days, I can assume these instructions have been successfully performed.**

**BY: Stanley, Marsha/Agent**

**FOR: MARSHA STANLEY/Principal**

**Without recourse. A.R.R**

## *DURABLE POWER OF ATTORNEY*

I, MARSHA STANLEY, residing at 1416 Azalea Dr, North Little Rock, Arkansas 72117, hereby appoint Stanley, Marsha of 1416 Azalea Dr., North Little Rock, Arkansas 72117, as my attorney-in-fact ("Agent") to exercise the powers and discretions described below.

This Power of Attorney shall not be affected by my subsequent incapacity.

I hereby revoke any and all general powers of attorney and special powers of attorney that previously have been signed by me.

However, the preceding sentence shall not have the effect of revoking any powers of attorney that are directly related to my health care that previously have been signed by me.

My Agent shall have full power and authority to act on my behalf. This power and authority shall authorize my Agent to manage and conduct all of my affairs and to exercise all of my legal rights and powers, including all rights and powers that I may acquire in the future. My Agent's powers shall include, but not be limited to, the power to:

1. Open, maintain or close bank accounts (including, but not limited to, checking accounts, savings accounts, and certificates of deposit), brokerage accounts, retirement plan accounts, and other similar accounts with financial institutions.

   a. Conduct any business with any banking or financial institution with respect to any of my accounts, including, but not limited to, making deposits and withdrawals, negotiating or endorsing any checks or other instruments with respect to any such accounts, obtaining bank statements, passbooks, drafts, money orders, warrants, and certificates or vouchers payable to me by any person, firm, corporation or political entity.

   b. Add, delete or change beneficiaries to any financial accounts I own including insurance policies, annuities, retirement accounts, payable on death savings or checking accounts or other investments.

   c. Perform any act necessary to deposit, negotiate, sell or transfer any note, security, or draft of the United States of America, including U.S. Treasury Securities.

   d. Have access to any safe deposit box that I might own, including its contents.

2. Provide for the support and protection of myself, my spouse, or of any minor child I have a duty to support or have established a pattern of prior support, including, without limitation, provision for food, lodging, housing, medical services, recreation and travel.

3. Sell, exchange, buy, invest, or reinvest any assets or property owned by me. Such assets

or property may include income producing or non-income producing assets and property.

4. Purchase and/or maintain insurance and annuity contracts, including life insurance upon my life or the life of any other appropriate person.

5. Take any and all legal steps necessary to collect any amount or debt owed to me, or to settle any claim, whether made against me or asserted on my behalf against any other person or entity.

6. Enter into binding contracts on my behalf.

7. Exercise all stock rights on my behalf as my proxy, including all rights with respect to stocks, bonds, debentures, commodities, options or other investments.

8. Maintain and/or operate any business that I may own.

9. Employ professional and business assistance as may be appropriate, including attorneys, accountants, and real estate agents.

10. Sell, convey, lease, mortgage, manage, insure, improve, repair, or perform any other act with respect to any of my property (now owned or later acquired) including, but not limited to, real estate and real estate rights (including the right to remove tenants and to recover possession). This includes the right to sell or encumber any homestead that I now own or may own in the future.

11. Prepare, sign, and file documents with any governmental body or agency, including, but not limited to, authorization to:

  a. Prepare, sign and file income and other tax returns with federal, state, local, and other governmental bodies.

  b. Obtain information or documents from any government or its agencies, and represent me in all tax matters, including the authority to negotiate, compromise, or settle any matter with such government or agency.

  c. Prepare applications, provide information, and perform any other act reasonably requested by any government or its agencies in connection with governmental benefits (including medical, military and social security benefits), and to appoint anyone, including my Agent, to act as my "Representative Payee" for the purpose of receiving Social Security benefits.

12. Make gifts from my assets to members of my family and to such other persons or charitable organizations with whom I have an established pattern of giving (or if it is appropriate to make such gifts for estate planning and/or tax purposes), to file state and federal gift tax returns, and to file a tax election to split gifts with my spouse, if any. No Agent

acting under this instrument, except as specifically authorized in this instrument, shall have the power or authority to (a) gift, appoint, assign or designate any of my assets, interests or rights, directly or indirectly, to such Agent, such Agent's estate, such Agent's creditors, or the creditors of such Agent's estate, (b) exercise any powers of appointment I may hold in favor of such Agent, such Agent's estate, such Agent's creditors, or the creditors of such Agent's estate, or (c) use any of my assets to discharge any of such Agent's legal obligations, including any obligations of support which such Agent may owe to others, *excluding* those whom I am legally obligated to support.

13. To transfer any of my assets to the trustee of any revocable trust created by me, if such trust is in existence at the time of such transfer.

14. To utilize my assets to fund a trust not created by me, but to which I have either established a pattern of funding, or to fund a trust created by my Agent for my benefit or the benefit of my dependents, heirs or devisees upon the advice of a financial adviser.

15. To create, sign, modify or revoke any trust agreements or other trust documents in an attempt to manage or create a trust that was created for my benefit or the benefit of my dependents, heirs or devisees. This shall include the creation, modification or revocation of any inter vivos, family living, irrevocable or revocable trusts.

16. Subject to other provisions of this document, my Agent may disclaim any interest, which might otherwise be transferred or distributed to me from any other person, estate, trust, or other entity, as may be appropriate. However, my Agent may not disclaim assets to which I would be entitled, if the result is that the disclaimed assets pass directly or indirectly to my Agent or my Agent's estate. Provided that they are not the same person, my Agent may disclaim assets which pass to my Gift Agent, and my Gift Agent may disclaim assets which pass to my Agent.

17. Have access to my healthcare and medical records and statements regarding billing, insurance and payments.

This Power of Attorney shall be construed broadly as a General Power of Attorney. The listing of specific powers is not intended to limit or restrict the general powers granted in this Power of Attorney in any manner.

Any power or authority granted to my Agent under this document shall be limited to the extent necessary to prevent this Power of Attorney from causing, (i) my income to be taxable to my Agent, (ii) my assets to be subject to a general power of appointment by my Agent, or (iii) my Agent to have any incidents of ownership with respect to any life insurance policies that I may own on the life of my Agent.

My Agent shall not be liable for any loss that results from a judgment error that was made in good faith. However, my Agent shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney. A Successor Agent shall not be liable

for acts of a prior Agent.

No person who relies in good faith on the authority of my Agent under this instrument shall incur any liability to me, my estate or my personal representative. I authorize my Agent to indemnify and hold harmless any third party who accepts and acts under this document.

If any part of any provision of this instrument shall be invalid or unenforceable under applicable law, such part shall be ineffective to the extent of such invalidity only, without in any way affecting the remaining parts of such provision or the remaining provisions of this instrument.

My Agent shall be entitled to reasonable compensation for any services provided as my Agent. My Agent shall be entitled to reimbursement of all reasonable expenses incurred as a result of carrying out any provision of this Power of Attorney.

My Agent shall provide an accounting for all funds handled and all acts performed as my Agent as required under state law or upon my request or the request of any authorized personal representative, fiduciary or court of record acting on my behalf.

This Power of Attorney shall become effective immediately, and shall not be affected by my disability or lack of mental competence, except as may be provided otherwise by an applicable state statute. This is a Durable Power of Attorney. This Power of Attorney shall continue effective until my death. This Power of Attorney may be revoked by me at any time by providing written notice to my Agent.

**[SIGNATURE PAGE FOLLOWS]**

Dated _August 21_____, 2023, at Little Rock, Arkansas.


_____
MARSHA STANLEY


Witness Signature:
Name:            Bridget Crow
City:            North Little Rock
State:           Arkansas


Witness Signature: _____
Name:            _____
City:            _____
State:           _____

STATE OF ARKANSAS,
COUNTY OF _Pulaski_ , ss:

On this _21st_ day of _August_ , _2023_, before me, _Clara Jean Hughes_ , personally appeared MARSHA STANLEY, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same as for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public
_Clara Jean Hughes_
My commission expires _02-22-2026_

CLARA JEAN HUGHES
NOTARY PUBLIC - ARKANSAS
COUNTY OF LONOKE
My Commission Expires 2-22-2026
12696977

## WITNESS ATTESTATION

The foregoing power of attorney was, on the date written above, published and declared by MARSHA STANLEY in our presence to be his/her power of attorney. We, in his/her presence and at his/her request, and in the presence of each other, have attested to the same and have signed our names as attesting witnesses.

Name: Bridget Crow
Address: 1416 Azalea Dr.
City, State, ZIP Code: North Little Rock, Arkansas 72117
Telephone: 8703298909

Name: _____
Address: _____
City, State, ZIP Code: _____, _____
Telephone: _____

**Notice to Person Executing Power of Attorney:**

A Power of Attorney is an important legal document. By signing the Power of Attorney, you are authorizing another person to act for you, the principal. Before you sign this Power of Attorney, you should know these important facts:

Your Agent (attorney-in-fact) has no duty to act unless you and your Agent agree otherwise in writing.

This document gives your Agent the powers to manage, dispose of, sell and convey your real and personal property, and to use your property as security if your Agent borrows money on your behalf, unless you provide otherwise in this Power of Attorney.

Your Agent will have the right to receive reasonable payment for services provided under this Power of Attorney unless you provide otherwise in this Power of Attorney.

The powers you give your Agent will continue to exist for your entire lifetime, unless you state that the Power of Attorney will last for a shorter period of time or unless you otherwise terminate the Power of Attorney. The powers you give your Agent in this Power of Attorney will continue to exist even if you can no longer make your own decisions respecting the management of your property, unless you provide otherwise in this Power of Attorney.

You can change or correct the terms of this Power of Attorney only by executing a new Power of Attorney, or by executing an amendment through the same formalities as an original. You have the right to revoke or terminate this Power of Attorney at any time, so long as you are competent.

This Power of Attorney must be dated and must be acknowledged before a notary public or signed by two witnesses. All witnesses must be mentally competent and they must witness the principal's signing of the Power of Attorney or (2) the principal's signing or acknowledgment of his or her signature. A Power of Attorney that may affect real property should be acknowledged before a notary public so that it may easily be recorded.

You should read this Power of Attorney carefully. When effective, this Power of Attorney will give your Agent the right to deal with property that you now have or might acquire in the future. The Power of Attorney is important to you. If you do not understand the Power of Attorney, or any provision of it, then you should obtain the assistance of an attorney or other qualified person.

**Notice to Person Accepting the Appointment as Attorney-in-Fact:**

By acting or agreeing to act as the Agent (attorney-in-fact) under this Power of Attorney, you assume the fiduciary and other legal responsibilities of an Agent. These responsibilities include:

1.  The legal duty to: act solely in the interest of the principal; act loyally, with care, competence, and diligence; and avoid conflicts of interest.

2.  The legal duty to keep a record of all transactions made on behalf of the principal, including the responsibility to produce receipts, ledgers and other records of all deposits, disbursements or other transactions involving the principal's assets or indebtedness.

3.  To cooperate with the principal's Agent for health care decisions, should the principal appoint such an Agent, in making decisions in accordance with the principal's desires or in the best interest of the principal if the principal's wishes are not known.

4.  The legal duty to preserve the principal's estate plan, if one exists, and the principal's desires for such plan to be preserved.

5.  The legal duty to keep the principal's property separate and distinct from any other property owned or controlled by you.

6.  The legal duty to terminate actions as Agent (Attorney-in-Fact) under this Power of Attorney upon the occurrence of any of the following:

    a.  Principal's death;
    b.  Revocation of the Power of Attorney of principal;
    c.  The arrival of any date stated in the Power of Attorney, which states the termination of the Power of Attorney, if any; or
    d.  No additional action is required under the Power of Attorney.

7.  If you are the spouse of the principal, the Power of Attorney terminates upon legal separation or dissolution of the marriage.

8.  You may be held responsible and liable for any intentional actions which violate or abuse your authority under this Power of Attorney as provided by the state and federal laws governing this Power of Attorney.

9.  You have the right to seek legal advice if you do not understand your duties as Agent or any provisions in the Power of Attorney.

You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property unless this Power of Attorney specifically authorizes you to transfer property to yourself or accept a gift of the principal's property. If you transfer the

principal's property to yourself without specific authorization in the Power of Attorney, you may be prosecuted for fraud and/or embezzlement. If the principal is 65 years of age or older at the time that the property is transferred to you without authority, you may also be prosecuted for elder abuse. In addition to criminal prosecution, you may be sued in civil court.

I have read the foregoing notice and I understand the legal and fiduciary duties that I assume by acting or agreeing to act as the Agent (attorney-in-fact) under the terms of this Power of Attorney.

Date: 09 · 21 · 2023

Signed:

Stanley, Marsha

This document was prepared by:
Marsha Stanley

# Bridgecrest

~~November 9, 2023~~ *Pay on Demand*

Re: Ten-Day Pay Off Quote
This quote is unofficial and subject to change

Account #: 200058239901        *Accepted for Value*
VIN: WAUBFAFL2FN023304
Vehicle YMM: 2015 Audi A4

Thank you for your recent request. The payoff amount for this account is $11,963.87. The payoff amount is good for ten days ending on 11/17/2023 ("the DATE") and includes the accrued daily interest for the ten day period. After that date, the account accrues interest in the amount of $4.20 per day. If this account is paid off after the DATE, the payoff amount you send must include the daily interest accrued for each day past the DATE.

The payoff amount may change and this quote is void if payments are reversed, cancelled, or returned for insufficient funds, or if other fees (such as late fees and non-sufficient fund fees) accumulate during the ten day pay off quote period. The payoff amount should be sent to:

Lockbox Services 842695, Bridgecrest
3440 Flair Dr.
El Monte, CA 91731

You agree not to send us payments marked "paid in full," "without recourse," or similar language. If you send such a payment, we may accept it without losing any of our rights under the credit agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: 7465 E Hampton Ave, Mesa, AZ 85209.

You may request a new pay off amount quote at any time.

Vehicle owner is responsible for making all payments that are due until all pay off fund amounts are received by us, posted to the account, and deemed irreversible in the payment processing systems.

Sincerely,
Customer Care
7465 E Hampton Ave
Mesa, AZ 85209

*Pay to Bearer:*
*Eleven Thousand nine Hundred sixty three 87/100*

THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION RECEIVED WILL BE USED FOR THAT PURPOSE. IF YOU FILED FOR BANKRUPTCY PROTECTION, PLEASE DISREGARD ANY REFERENCE TO DEBT COLLECTION. THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY.

PO BOX 53087
Phoenix, Arizona 85072

**Bridgecrest**
Credit Company

August 30, 2023

Marsha N Stanley
1416 Azalea Dr
North Little Rock, AR  72117

| | |
|---|---|
| **Account Number** | 200058239901 |
| **Buyer** | Marsha N Stanley |
| **Co-Signer** | NA |
| **Vehicle** | 2015 Audi A4 |

**RE: Your Letter Dated August 26, 2023**

Thank you for your recent request.  We have reviewed your account and have verified that you still owe the amount due under the contract.  Additionally, we have determined that you are still in possession of our vehicle.

If you have any further questions, please contact us at 800-967-8526. We are available from 6:00 am to 6:00 pm Arizona time, Monday through Friday, Saturday 6:00 am to 3:00 pm.

Thank you for being a Bridgecrest customer.

Bridgecrest,
Customer Service

This is an attempt to collect a debt.  Any information received will be used for that purpose.  If you have filed for bankruptcy protection, please disregard any reference to debt collection. This email is for informational purposes only.

**OPPORTUNITY TO CURE**

I, Stanley, Marsha/Agent here on behalf of MARSHA STANLEY/Principal hereby accepts all title, rights, interest, and equity owed to the MARSHA STANLEY/Principal. I hereby instruct CFO or Indenture Trustee for Bridgecrest to apply the principal's balance to the principal's account number #200058239901 each and every billing cycle. I hereby instruct the CFO or Indenture Trustee for Bridecrest to respond in writing if these instructions can not be completed. You have five business days. If I do not receive anything in five business days, I can assume these instructions have been successfully performed.

BY: Stanley, Marsha/Agent

FOR: MARSHA STANLEY/Principal

Without recourse. A.R.R


**Bridgecrest**

~~November 9, 2023~~ *Pay on Demand* (handwritten)

Re: Ten-Day Pay Off Quote
This quote is unofficial and subject to change

Account #: 200058239901          *Accepted for Value* (handwritten)
VIN: WAUBFAFL2FN023304
Vehicle YMM: 2015 Audi A4

Thank you for your recent request. The payoff amount for this account is $11,963.87. The payoff amount is good for ten days ending on 11/17/2023 ("the DATE") and includes the accrued daily interest for the ten day period. After that date, the account accrues interest in the amount of $4.20 per day. If this account is paid off after the DATE, the payoff amount you send must include the daily interest accrued for each day past the DATE.

The payoff amount may change and this quote is void if payments are reversed, cancelled, or returned for insufficient funds, or if other fees (such as late fees and non-sufficient fund fees) accumulate during the ten day pay off quote period. The payoff amount should be sent to:

Lockbox Services 842695, Bridgecrest
3440 Flair Dr.
El Monte, CA 91731

You agree not to send us payments marked "paid in full," "without recourse," or similar language. If you send such a payment, we may accept it without losing any of our rights under the credit agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: 7465 E Hampton Ave, Mesa, AZ 85209.

You may request a new pay off amount quote at any time.

Vehicle owner is responsible for making all payments that are due until all pay off fund amounts are received by us, posted to the account, and deemed irreversible in the payment processing systems.

Sincerely,
Customer Care
7465 E Hampton Ave
Mesa, AZ 85209

*Pay to Bearer:* (handwritten)
*Eleven Thousand nine Hundred sixty three 87/100* (handwritten)

THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION RECEIVED WILL BE USED FOR THAT PURPOSE. IF YOU FILED FOR BANKRUPTCY PROTECTION, PLEASE DISREGARD ANY REFERENCE TO DEBT COLLECTION. THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY.

PO BOX 53087
Phoenix, Arizona 85072



**Bridgecrest**
Credit Company

September 11, 2023

Marsha N Stanley
1416 Azalea Dr
North Little Rock, AR  72117

| | |
|---|---|
| **Account Number** | 200058239901 |
| **Buyer** | Marsha N Stanley |
| **Co-Signer** | NA |
| **Vehicle** | 2015 Audi A4 |

**RE: Your Letter Dated August 21, 2023**

Thank you for your recent request.  We have reviewed your account and have verified that you still owe the amount due under the contract.  Additionally, we have determined that you are still in possession of our vehicle.

If you have any further questions, please contact us at 800-967-8526. We are available from 6:00 am to 6:00 pm Arizona time, Monday through Friday, Saturday 6:00 am to 3:00 pm.

Thank you for being a Bridgecrest customer.

Bridgecrest,
Customer Service

This is an attempt to collect a debt.  Any information received will be used for that purpose.  If you have filed for bankruptcy protection, please disregard any reference to debt collection. This email is for informational purposes only.

**DEFAULT JUDGEMENT**

I, Stanley, Marsha/Agent here on behalf of MARSHA STANLEY/Principal hereby accepts all title, rights, interest, and equity owed to the MARSHA STANLEY/Principal. I hereby instruct CFO Daniel Gaudreau or Indenture Trustee for Bridgecrest to apply the principal's balance to the principal's account number #200058239901 each and every billing cycle. I hereby instruct the CFO Daniel Gaudreau or Indenture Trustee for Bridecrest to respond in writing if these instructions can not be completed. You have five business days. If I do not receive anything in five business days, I can assume these instructions have been successfully performed.

BY: Stanley, Marsha/Agent

FOR: MARSHA STANLEY/Principal

Without recourse. A.R.R


# Bridgecrest

~~November 9, 2023~~ *pay on Demand*

Re: Ten-Day Pay Off Quote
This quote is unofficial and subject to change

Account #: 200058239901         *Accepted for value*
VIN: WAUBFAFL2FN023304
Vehicle YMM: 2015 Audi A4

Thank you for your recent request. The payoff amount for this account is $11,963.87. The payoff amount is good for ten days ending on 11/17/2023 ("the DATE") and includes the accrued daily interest for the ten day period. After that date, the account accrues interest in the amount of $4.20 per day. If this account is paid off after the DATE, the payoff amount you send must include the daily interest accrued for each day past the DATE.

The payoff amount may change and this quote is void if payments are reversed, cancelled, or returned for insufficient funds, or if other fees (such as late fees and non-sufficient fund fees) accumulate during the ten day pay off quote period. The payoff amount should be sent to:

Lockbox Services 842695, Bridgecrest
3440 Flair Dr.
El Monte, CA 91731

You agree not to send us payments marked "paid in full," "without recourse," or similar language. If you send such a payment, we may accept it without losing any of our rights under the credit agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: 7465 E Hampton Ave, Mesa, AZ 85209.

You may request a new pay off amount quote at any time.

Vehicle owner is responsible for making all payments that are due until all pay off fund amounts are received by us, posted to the account, and deemed irreversible in the payment processing systems.

Sincerely,
Customer Care
7465 E Hampton Ave
Mesa, AZ 85209

*Pay to Bearer:*

*Eleven Thousand nine Hundred sixty three ⁸⁷/₁₀₀*

THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION RECEIVED WILL BE USED FOR THAT PURPOSE. IF YOU FILED FOR BANKRUPTCY PROTECTION, PLEASE DISREGARD ANY REFERENCE TO DEBT COLLECTION. THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY.

**PO BOX 53087**
**Phoenix, Arizona 85072**



**VIA United State Postal Service**
**TRACKING NO.: 7022 3330 0000 0864 8402**


Marsha N Stanley
1416 Azalea Dr
North Little Rock, AR  72117



**RE:** Your inquiry dated 09/22/2022

**Account Number:**    **200058239901**
**Vehicle:**           **2015 Audi A4**


Dear Marsha N Stanley,

We are in receipt of your letter dated 09/22/2022, a copy of which is enclosed.

Despite your protests, you continue to be bound by the agreements that you have with Bridgecrest, and you thus owe all amounts still due and owing on your retail installment contract.  Your letter has no legal impact on the binding agreement you entered into with Bridgecrest. We require all payments to be made in United States currency.

Please do not send future correspondence of this nature to Bridgecrest.  However, we invite you to contact us to make arrangements to pay the debt you owe or if you have any questions about your agreements with us.


Sincerely,

Customer Service
CC: File


**This is an attempt to collect a debt.  Any information received will be used for that purpose.  If you have filed for bankruptcy protection, please disregard any reference to debt collection. This email is for informational purposes only.**

October 13, 2023

Chief Financial Officer of Bridgecrest,

Dear Daniel Gaureau,

On October 7, 2023, I received your response to my documents pertaining to Account No.:2000582339901. The documentations I am sending is my lawful form of payment in accordance with the Bill of Exchange Act 1882. As the consumer, I am exercising my rights in good faith. As stated in the Bill of Exchange Act 1882, section 55, Line 2, endorsed bills shall be accepted and paid according to its tenor and that if it is dishonored, he will compensate the holder or a subsequent endorser who is compelled to pay it. Therefore, refusing my lawful form of payment is a violation of the Bill of Exchange Act 1882 and the Consumer Protection Law. Furthermore, due to the company's affiliation with a banking instituting, by law you are obligated to follow the rules and regulation under the Federal Reserve Act. Refusing to accept my lawful form of payment and denial of my rights is considered a breach of fiduciary duties. Any breach of fiduciary duties is subject to Civil Money Penalties as stated in section 29 of the Federal Reserve Act. For any further refusal of my legitimate form of payment, please respond in writing with the appropriate laws attached that supports your decision making.

Best Regards,

By: Stanley, Marsha/Agent

For: MARSHA STANLEY/Principal

(b) An antecedent debt or liability. Such a debt or liability is deemed valuable consideration whether the bill is payable on demand or at a future time.

(2) Where value has at any time been given for a bill the holder is deemed to be a holder for value as regards the acceptor and all parties to the bill who became parties prior to such time.

(3) Where the holder of a bill has a lien on it arising either from contract or by implication of law, he is deemed to be a holder for value to the extent of the sum for which he has a lien.

**28** **Accommodation bill or party.**

(1) An accommodation party to a bill is a person who has signed a bill as drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person.

(2) An accommodation party is liable on the bill to a holder for value; and it is immaterial whether, when such holder took the bill, he knew such party to be an accommodation party or not.

**29** **Holder in due course.**

(1) A holder in due course is a holder who has taken a bill, complete and regular on the face of it, under the following conditions; namely,

(a) That he became the holder of it before it was overdue, and without notice that it had been previously dishonoured, if such was the fact:

(b) That he took the bill in good faith and for value, and that at the time the bill was negotiated to him he had no notice of any defect in the title of the person who negotiated it.

(2) In particular the title of a person who negotiates a bill is defective within the meaning of this Act when he obtained the bill, or the acceptance thereof, by fraud, duress, or force and fear, or other unlawful means, or an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.

(3) A holder (whether for value or not), who derives his title to a bill through a holder in due course, and who is not himself a party to any fraud or illegality affecting it, has all the rights of that holder in due course as regards the acceptor and all parties to the bill prior to that holder.

---

**Modifications etc. (not altering text)**

C4   S. 29 excluded by Consumer Credit Act 1974 (c. 39, SIF 60), s. 125(1)

C5   S. 29(2) amended by Consumer Credit Act 1974 (c. 39, SIF 60), s. 125(2)

---

**30** **Presumption of value and good faith.**

(1) Every party whose signature appears on a bill is prima facie deemed to have become a party thereto for value.

(2) Every holder of a bill is prima facie deemed to be a holder in due course; but if in an action on a bill it is admitted or proved that the acceptance, issue, or subsequent negotiation of the bill is affected with fraud, duress, or force and fear, or illegality, the burden of proof is shifted, unless and until the holder proves that, subsequent to the alleged fraud or illegality, value has in good faith been given for the bill.



*Negotiation of Bills*

**31** **Negotiation of bill.**

(1) A bill is negotiated when it is transferred from one person to another in such a manner as to constitute the transferee the holder of the bill.

(2) A bill payable to bearer is negotiated by delivery.

(3) A bill payable to order is negotiated by the indorsement of the holder completed by delivery.

(4) Where the holder of a bill payable to his order transfers it for value without indorsing it, the transfer gives the transferee such title as the transferor had in the bill, and the transferee in addition acquires the right to have the indorsement of the transferor.

(5) Where any person is under obligation to indorse a bill in a representative capacity, he may indorse the bill in such terms as to negative personal liability.

**32** **Requisites of a valid indorsement.**

An indorsement in order to operate as a negotiation must comply with the following conditions, namely,—

(1) It must be written on the bill itself and be signed by the indorser. The simple signature of the indorser on the bill, without additional words, is sufficient.

An indorsement written on an allonge, or on a "copy" of a bill issued or negotiated in a country where "copies" are recognised, is deemed to be written on the bill itself.

(2) It must be an indorsement of the entire bill. A partial indorsement, that is to say, an indorsement which purports to transfer to the indorsee a part only of the amount payable, or which purports to transfer the bill to two or more indorsees severally, does not operate as a negotiation of the bill.

(3) Where a bill is payable to the order of two or more payees or indorsees who are not partners all must indorse, unless the one indorsing has authority to indorse for the others.

(4) Where, in a bill payable to order, the payee or indorsee is wrongly designated, or his name is mis-spelt, he may indorse the bill as therein described, adding, if he thinks fit, his proper signature.

(5) Where there are two or more indorsements on a bill, each indorsement is deemed to have been made in the order in which it appears on the bill, until the contrary is proved.

(6) An indorsement may be made in blank or special. It may also contain terms making it restrictive.

**33** **Conditional indorsement.**

Where a bill purports to be indorsed conditionally the condition may be disregarded by the payer, and payment to the indorsee is valid whether the condition has been fulfilled or not.

**34** **Indorsement in blank and special indorsement.**

(1) An indorsement in blank specifies no indorsee, and a bill so indorsed becomes payable to bearer.

(2) A special indorsement specifies the person to whom, or to whose order, the bill is to be payable.

(3) The provisions of this Act relating to a payee apply with the necessary modifications to an indorsee under a special indorsement.

(4) When a bill has been indorsed in blank, any holder may convert the blank indorsement into a special indorsement by writing above the indorser's signature a direction to pay the bill to or to the order of himself or some other person.

**35** **Restrictive indorsement.**

(1) An indorsement is restrictive which prohibits the further negotiation of the bill or which expresses that it is a mere authority to deal with the bill as thereby directed and not a transfer of the ownership thereof, as, for example, if a bill be indorsed "Pay D. only," or "Pay D. for the account of X.," or "Pay D. or order for collection."

(2) A restrictive indorsement gives the indorsee the right to receive payment of the bill and to sue any party thereto that his indorser could have sued, but gives him no power to transfer his rights as indorsee unless it expressly authorise him to do so.

(3) Where a restrictive indorsement authorises further transfer, all subsequent indorsees take the bill with the same rights and subject to the same liabilities as the first indorsee under the restrictive indorsement.

(9)    Protest is dispensed with by any circumstance which would dispense with notice of dishonour. Delay in noting or protesting is excused when the delay is caused by circumstances beyond the control of the holder, and not imputable to his default, misconduct, or negligence. When the cause of delay ceases to operate the bill must be noted or protested with reasonable diligence.

---

**Textual Amendments**

F8    Words substituted by Bills of Exchange (Time of Noting) Act 1917 (c. 48), s. 1.

F9    Words in s. 51(6)(a) substituted (26.3.2001) by S.I. 2001/1149, art. 3(1), Sch. 1 para. 4(6)

F10    S. 51(7A) inserted (1.1.2010) by Legal Services Act 2007 (c. 29), s. 211(2), Sch. 21 para. 9 (with ss. 29, 192, 193); S.I. 2009/3250, art. 2(h)

---

**52**        **Duties of holder as regards drawee or acceptor.**

(1)    When a bill is accepted generally presentment for payment is not necessary in order to render the acceptor liable.

(2)    When by the terms of a qualified acceptance presentment for payment is required, the acceptor, in the absence of an express stipulation to that effect, is not discharged by the omission to present the bill for payment on the day that it matures.

(3)    In order to render the acceptor of a bill liable it is not necessary to protest it, or that notice of dishonour should be given to him.

(4)    [F11 Subject to Part 4A (presentment by electronic means),] Where the holder of a bill presents it for payment, he shall exhibit the bill to the person from whom he demands payment, and when a bill is paid the holder shall forthwith deliver it up to the party paying it.

---

**Textual Amendments**

F11    Words in s. 52(4) inserted (26.3.2015, 31.7.2016 in so far as not already in force) by Small Business, Enterprise and Employment Act 2015 (c. 26), ss. 13(3), 164(4)

---

*Liabilities of Parties*

**53**        **Funds in hands of drawee.**

(1)    A bill, of itself, does not operate as an assignment of funds in the hands of the drawee available for the payment thereof, and the drawee of a bill who does not accept as required by this Act is not liable on the instrument. This sub-section shall not extend to Scotland.

(2)    [F12[F13 Subject to section 75A of this Act.]]in Scotland, where the drawee of a bill [F14 other than a cheque] has in his hands funds available for the payment thereof, the bill operates as an assignment of the sum for which it is drawn in favour of the holder, from the time when the bill is presented to the drawee.

---

**Textual Amendments**

F12    Words in s. 53(2) cease to have effect (12.4.2009) by Banking Act 2009 (c. 1), ss. 254(4)(a)(i), 263(2) (with s. 247)

F13    Words inserted (S.) by Law Reform (Miscellaneous Provisions) (Scotland) Act 1985 (c. 73, SIF 30), s. 11(a)

F14    Words in s. 53(2) inserted (12.4.2009) by Banking Act 2009 (c. 1), ss. 254(4)(a)(ii), 263(2) (with s. 247)

---

**54**        **Liability of acceptor.**

The acceptor of a bill, by accepting it—

(1)    Engages that he will pay it according to the tenor of his acceptance:

(2)    Is precluded from denying to a holder in due course:

(a)    The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the bill;

(b)    In the case of a bill payable to drawer's order, the then capacity of the drawer to indorse, but not the genuineness or validity of his indorsement;

(c)    In the case of a bill payable to the order of a third person, the existence of the payee and his then capacity to indorse, but not the genuineness or validity of his indorsement.

**55**        **Liability of drawer or indorser.**

(1)    The drawer of a bill by drawing it—

(a)    Engages that on due presentment it shall be accepted and paid according to its tenor, and that if it be dishonoured he will compensate the holder or any indorser who is compelled to pay it, provided that the requisite proceedings on dishonour be duly taken;

(b)    Is precluded from denying to a holder in due course the existence of the payee and his then capacity to indorse.

(2)    The indorser of a bill by indorsing it—

(a)    Engages that on due presentment it shall be accepted and paid according to its tenor, and that if it be dishonoured he will compensate the holder or a subsequent indorser who is compelled to pay it, provided that the requisite proceedings on dishonour be duly taken;

(b)    Is precluded from denying to a holder in due course the genuineness and regularity in all respects of the drawer's signature and all previous indorsements;

(c)    Is precluded from denying to his immediate or a subsequent indorsee that the bill was at the time of his indorsement a valid and subsisting bill, and that he had then a good title thereto.

**56**        **Stranger signing bill liable as indorser.**

Where a person signs a bill otherwise than as drawer or acceptor, he thereby incurs the liabilities of an indorser to a holder in due course.

**57**        **Measure of damages against parties to dishonoured bill.**

Where a bill is dishonoured, the measure of damages, which shall be deemed to be liquidated damages, shall be as follows:

(1)    The holder may recover from any party liable on the bill, and the drawer who has been compelled to pay the bill may recover from the acceptor, and an indorser who has been compelled to pay the bill may recover from the acceptor or from the drawer, or from a prior indorser—

(a)    The amount of the bill:

(b)    Interest thereon from the time of presentment for payment if the bill is payable on demand, and from the maturity of the bill in any other case:

(c)    The expenses of noting, or, when protest is necessary, and the protest has been extended, the expenses of protest.

(2)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . F15

(3)

# Federal Reserve Act

## Section 16. Note Issues

### 1. Issuance of Federal Reserve notes; nature of obligation; where redeemable

Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are hereby authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

[12 USC 411. As amended by act of Jan. 30, 1934 (48 Stat. 337). For redemption of Federal reserve notes whose bank of issue cannot be identified, see act of June 13, 1933.]

### 2. Application for notes by Federal Reserve banks

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A of this Act, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of section 14 of this Act, or bankers' acceptances purchased under the provisions of said section 14, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under section 14 of this Act or any other asset of a Federal reserve bank. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of, or are otherwise held by or on behalf of, Federal Reserve banks.

[12 USC 412. As amended by the acts of Sept. 7, 1916 (39 Stat. 754); June 21, 1917 (40 Stat. 236); Feb. 27, 1932 (47 Stat. 57); Feb. 3, 1933 (47 Stat. 794); Jan. 30, 1934 (48 Stat. 338); March 6, 1934 (48 Stat. 991); June 30, 1941 (55 Stat. 395); May 25, 1943 (57 Stat. 85); June 12, 1945 (59 Stat. 237); June 19, 1968 (82 Stat. 189); Nov. 10, 1978 (92 Stat. 3672); March 31, 1980 (94 Stat. 140); Dec. 6, 1999 (113 Stat. 1638); and Oct. 28, 2003 (117 Stat. 1193).]

### 3. Distinctive letter on notes; destruction of unfit notes

# Federal Reserve Act

---

## Section 29. Civil Money Penalty

**(a) First Tier.** Any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who, violates any provision of section 22, 23A, or 23B, or any regulation issued pursuant thereto, shall forfeit and pay a civil penalty of not more than $5,000 for each day during which such violation continues.

[12 USC 504(a). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by acts of Oct. 15, 1982 (96 Stat. 1523) and Aug. 9, 1989 (103 Stat. 470).]

**(b) Second Tier.** Notwithstanding subsection (a), any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who

1.  A. commits any violation described in subsection (a);
    B. recklessly engages in an unsafe or unsound practice in conducting the affairs of such member bank; or
    C. breaches any fiduciary duty;

2. which violation, practice, or breach--

    A. is part of a pattern of misconduct;
    B. causes or is likely to cause more than a minimal loss to such member bank; or
    C. results in pecuniary gain or other benefit to such party,

shall forfeit and pay a civil penalty of not more than $25,000 for each day during which such violation, practice, or breach continues.

[12 USC 504(b). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(c) Third Tier.** Notwithstanding subsections (a) and (b), any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who--

1. knowingly--

    A. commits any violation described in subsection (a);
    B. engages in any unsafe or unsound practice in conducting the affairs of such credit union; or
    C. breaches any fiduciary duty; and

2. knowingly or recklessly causes a substantial loss to such credit union or a substantial pecuniary gain or other benefit to such party by reason of such violation, practice, or breach,

shall forfeit and pay a civil penalty in an amount not to exceed the applicable maximum amount determined under subsection (d) for each day during which such violation, practice, or breach continues.

[12 USC 504(c). As added by act of Nov. 10, 1978 (72 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(d) Maximum Amounts Of Penalties For Any Violation Described In Subsection (c).** The maximum daily amount of any civil penalty which may be assessed pursuant to subsection (c) for any violation, practice, or breach described in such subsection is--

1. in the case of any person other than a member bank, an amount to not exceed $1,000,000; and
2. in the case of a member bank, an amount not to exceed the lesser of --

   A. $1,000,000; or
   B. 1 percent of the total assets of such member bank.

[12 USC 504(d). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by acts of Oct. 15, 1982 (96 Stat. 1523) and Aug. 9, 1989 (103 Stat. 470).]

**(e) Assessment, Etc.** Any penalty imposed under subsection (a), (b), or (c) shall be assessed and collected by

1. in the case of a national bank, by the Comptroller of the Currency; and
2. in the case of a State member bank, by the Board,

in the manner provided in subparagraphs (E), (F), (G), and (I) of section 8(i)(2) of the Federal Deposit Insurance Act for penalties imposed (under such section) and any such assessment shall be subject to the provisions of such section.

[12 USC 504(e). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(f) Hearing.** The member bank or other person against whom any penalty is assessed under this section shall be afforded an agency hearing if such member bank or person submits a request for such hearing within 20 days after the issuance of the notice of assessment. Section 8(h) of the Federal Deposit Insurance Act shall apply to any proceeding under this section.

[12 USC 504(f). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(g) Disbursement.** All penalties collected under authority of this paragraph shall be deposited into the Treasury.

[12 USC 504(g). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat.

**PO BOX 53087**
**Phoenix, Arizona 85072**



**VIA United States Postal Service**
**TRACKING NO.: 7022 2410 0000 2271 2286**

Marsha N Stanley
1416 Azalea Dr
North Little Rock, AR  72117

**RE:** Your inquiry dated October 13, 2023

**Account Number:**    **200058239901**
**Vehicle:**             2015 Audi A4

Dear Marsha N Stanley,

We are in receipt of your letter dated October 13, 2023, a copy of which is enclosed.

Despite your protests, you continue to be bound by the agreements that you have with Bridgecrest, and you thus owe all amounts still due and owing on your retail installment contract.  Your letter has no legal impact on the binding agreement you entered into with Bridgecrest. We require all payments to be made in United States currency.

Please do not send future correspondence of this nature to Bridgecrest.  However, we invite you to contact us to make arrangements to pay the debt you owe or if you have any questions about your agreements with us.

Sincerely,

Customer Service
CC: File

**This is an attempt to collect a debt.  Any information received will be used for that purpose.  If you have filed for bankruptcy protection, please disregard any reference to debt collection. This email is for informational purposes only.**

# Breach of Contract Notice

**October 20, 2023**

Daniel Gaudreau
P.O. Box 53087
Phoenix, Arizona

**RE: Breach of Contract**

Dear Daniel Gaudreau,

PLEASE TAKE NOTICE that you are in breach of our contract titled "Retail Installment Contract and Security Agreement" dated June 28, 2020 (the "Contract"). Specifically, you have breached the following obligation(s) under the Contract:

Section: Prepayment
Description: The contract states I may prepay this contract in full or in part at any time without penalties. I have mailed my tender of payment (Endorsed Bill of Exchange) directly to you four times and you have refused to accept it. My tender of payment is in accordance with the Bill of Exchange Act 1882. The Bill of Exchange Act is an act to codify the law relating to Bills of exchange, cheques, and Promissory Notes. Your response to my tender of payment was that you only accept U.S Currency. However, U.S. currency is federal reserve notes which are legal tender for all debts, public charges, taxes, and dues. In the Federal Reserve Act section 16, Line 2, it states endorsed bill of exchange can be utilized to obtain Federal Reserve Notes (U.S. Currency) from federal reserve banks. Refusing my tender of payment is considered breach of fiduciary duties. A breach of fiduciary duties is subject to civil money penalties per the Federal reserve act section 29.

PLEASE TAKE FURTHER NOTICE that unless the breach is remedied within 5 days of this letter's date, I will take action to protect my rights under the Contract and under any applicable law. All my rights are reserved under this notice.

You may contact me by mail if you have any questions.

Sincerely,

Stanley, Marsha/Agent
MARSHA STANLEY/Principal
1416 Azalea Dr
North Little Rock, Arkansas 72117

PO BOX 53087
Phoenix, Arizona 85072

**Bridgecrest**
Credit Company

October 31, 2023

Marsha N Stanley
1416 Azalea Dr
North Little Rock, AR  72117

**Account Number**     200058239901
**Buyer**              Marsha N Stanley
**Co-Signer**          NA
**Vehicle**            2015 Audi A4

**RE: Your Letter Dated October 20, 2023**

Thank you for your recent request.  We have reviewed your account and have verified that you still owe the amount due under the contract.  Additionally, we have determined that you are still in possession of our vehicle.

If you have any further questions, please contact us at 800-967-8526. We are available from 6:00 am to 6:00 pm Arizona time, Monday through Friday, Saturday 6:00 am to 3:00 pm.

Thank you for being a Bridgecrest customer.

Bridgecrest,
Customer Service

**This is an attempt to collect a debt.  Any information received will be used for that purpose.  If you have filed for bankruptcy protection, please disregard any reference to debt collection. This email is for informational purposes only.**

**DEFAULT JUDGEMENT**

**I, Stanley, Marsha/Agent here on behalf of MARSHA STANLEY/Principal hereby accepts all title, rights, interest, and equity owed to the MARSHA STANLEY/Principal. I hereby instruct CFO Daniel Gaudreau or Indenture Trustee for Bridgecrest to apply the principal's balance to the principal's account number #200058239901 each and every billing cycle. I hereby instruct the CFO Daniel Gaudreau or Indenture Trustee for Bridecrest to respond in writing if these instructions can not be completed. You have five business days. If I do not receive anything in five business days, I can assume these instructions have been successfully performed.**

**BY: Stanley, Marsha/Agent**

**FOR: MARSHA STANLEY/Principal**

**Without recourse. A.R.R**

November 9, 2023

Chief Financial Officer of Bridgecrest

Daniel Gaudreau

P.O. Box 53087

Phoenix, AZ 85072

RE: Account# 200058239901

This account was opened utilizing the application with my social security number on it as collateral security, to obtain Federal Reserve Notes from the Federal Reserve Bank per the Federal Reserve Act. By law, once the account opened, I have the right to access the securities. As you may know, there is interest and equity associated with this account, that is owed to the owner. As the beneficial owner of this account, I am instructing you to transfer the interest and equity on this account for set off, utilizing the endorsed bill.

As I stated in my previous letter, the documentation I am sending to you is my tender of payment which includes my endorsed bill of exchange and my written instructions (Tender). My endorsed bill is in accordance with the Bills of Exchange Act 1882. The Bills of Exchange Act 1882 was implemented to codify the laws pertaining to Bills of Exchange (Bills), Cheques (checks), and Promissory Notes (Notes). According to the Bills of Exchange Act 1882, Bills are considered a negotiable instrument and you can negotiate by endorsement.

Furthermore, the Federal Reserve System is the Central Banking System for the United States. Federal Reserve Notes are legal tender for all public and private debt. However, Federal reserve notes are negotiable instruments just like bills. In the Federal Reserve Act section 16, Line 2, it states Bills of Exchange and Endorsed Bills of Exchange can be utilized to obtain Federal Reserve Notes from Federal Reserve Banks. By law, endorsed bills of exchange is an acceptable form of payment. (31 CFR 328.3)

Refusing to accept my tender of payment and forcing me to pay a PREPAID contract with Federal Reserve Notes is EXTORTION. For any further refusal of my legitimate form of payment, please respond in writing with the appropriate laws attached that supports your decision making.

Best Regards,

By: Stanley, Marsha/Agent

For: MARSHA STANLEY/Principal


# Bridgecrest

~~November 9, 2023~~ *pay on Demand*

Re: Ten-Day Pay Off Quote
This quote is unofficial and subject to change

**Account #: 200058239901**          *Accepted for value*
**VIN: WAUBFAFL2FN023304**
**Vehicle YMM: 2015 Audi A4**

Thank you for your recent request. The payoff amount for this account is $11,963.87. The payoff amount is good for ten days ending on 11/17/2023 ("the DATE") and includes the accrued daily interest for the ten day period. After that date, the account accrues interest in the amount of $4.20 per day. If this account is paid off after the DATE, the payoff amount you send must include the daily interest accrued for each day past the DATE.

The payoff amount may change and this quote is void if payments are reversed, cancelled, or returned for insufficient funds, or if other fees (such as late fees and non-sufficient fund fees) accumulate during the ten day pay off quote period. The payoff amount should be sent to:

Lockbox Services 842695, Bridgecrest
3440 Flair Dr.
El Monte, CA 91731

You agree not to send us payments marked "paid in full," "without recourse," or similar language. If you send such a payment, we may accept it without losing any of our rights under the credit agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: 7465 E Hampton Ave, Mesa, AZ 85209.

You may request a new pay off amount quote at any time.

Vehicle owner is responsible for making all payments that are due until all pay off fund amounts are received by us, posted to the account, and deemed irreversible in the payment processing systems.

Sincerely,
Customer Care
7465 E Hampton Ave
Mesa, AZ 85209

*Pay to Bearer:*
*Eleven Thousand nine Hundred sixty three 87/100*

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION RECEIVED WILL BE USED FOR THAT PURPOSE. IF YOU FILED FOR BANKRUPTCY PROTECTION, PLEASE DISREGARD ANY REFERENCE TO DEBT COLLECTION. THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY.**

DocuSign Envelope ID: CD985C78-D7FE-4488-91A1-05F47E309806

**THIS IS A COPY**
This is a copy view of the Authoritative Copy held
by the designated custodian

**AR-102 08/01/2018**

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CARVANA, LLC | **Marsha Stanley** | No. | 2000582399 |
| 7201 APPLING FARMS PKWY | 1416 Azalea Dr | Date | 06/28/2020 |
| MEMPHIS TN 38133-4738 | North Little Rock AR 72117 | | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| 12.919 % | $ 9,396.06 | $ 21,278.68 | $ 30,674.74 | $ 0.00<br>$ 30,674.74 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 427.00 | monthly beginning    07/29/20 |
| 1 | $ 357.74 | 06/29/26 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2015 | Audi | A4 | Sedan | WAUBFAFL2FN023304 | 49939 |

☐ New
☒ Used
☐ Demo

Other:

N/A

## Description of Trade-In

| | | | |
|---|---|---|---|
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |

## Sales Agreement

**Payment.** You promise to pay us the principal amount of
$ 21,278.68 plus finance charges accruing on the unpaid
balance at the rate of 12.919 % per year from the date of this Contract
until paid in full. You agree to pay this Contract according to the payment schedule and late
charge provisions shown in the Truth-In-Lending Disclosure. You also agree to pay any
additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of
this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

**Service and Handling Fee.** You agree to pay a service and handling fee of
$ N/A . A service and handling fee is not an official
fee. A service and handling fee is not required by law but may be charged to the
customer for performing services and handling documents relating to the closing
of a sale or lease. The service and handling fee may result in profit to the dealer.
The service and handling fee does not include payment for the preparation of legal
documents. This notice is required by law.

*[This area intentionally left blank.]*

DocuSign Envelope ID: CD985C78-D7FE-4488-91A1-05F47E309806

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

## Itemization of Amount Financed

a. **Cash Price** of Vehicle, etc. (incl. sales tax of
$ 1,205.29 ) $ 18,104.29

b. Trade-in allowance $ 0.00

c. Less: Amount owing, paid to (includes k):
N/A $ N/A

d. Net trade-in (b-c; if negative, enter $0 here and enter
the amount on line k) $ 0.00

e. Cash payment $ 0.00

f. Manufacturer's rebate $ 0.00

g. Deferred down payment $ 0.00

h. Other down payment (describe)
N/A $ 0.00

i. **Down Payment** (d + e + f + g + h) $ 0.00

j. **Unpaid balance of Cash Price** (a-i) $ 18,104.29

k. Financed trade-in balance (see line d) $ 0.00

l. Paid to public officials, including filing fees $ 39.39

m. Insurance premiums paid to insurance company(ies) $ 0.00

n. Service Contract, paid to:
Carvana $ 1,850.00

o. Service and handling fee, paid to Seller $ N/A

p. To: Transit Charge $ 490.00

q. To: Gap Coverage $ 795.00

r. To: N/A $ N/A

s. To: N/A $ N/A

t. To: N/A $ N/A

u. To: N/A $ N/A

v. To: N/A $ N/A

w. To: N/A $ N/A

x. To: N/A $ N/A

y. To: N/A $ N/A

z. **Total Other Charges/Amts Paid** (k thru y) $ 3,174.39

aa. **Prepaid Finance Charge** $ 0.00

bb. **Amount Financed** (j + z-aa) $ 21,278.68

We may retain or receive a portion of any amounts paid to others.

*[This area intentionally left blank.]*

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

☐ Single    ☐ Joint    ☐ None

Premium $ N/A                    Term N/A

Insured N/A

**Credit Disability**

☐ Single    ☐ Joint    ☐ None

Premium $ N/A                    Term N/A

Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: N/A                    N/A DOB

By: N/A                    N/A DOB

By: N/A                    N/A DOB

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ 1,000 . If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This premium is calculated as follows:

☐ $ N/A Deductible, Collision Cov. $ N/A

☐ $ N/A Deductible, Comprehensive $ N/A

☐ Fire-Theft and Combined Additional Cov. $ N/A

☐ N/A $ N/A

**Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.**

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A for N/A of coverage.

DocuSign Envelope ID: CD985C78-D7FE-4488-91A1-05F47E309806

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

## Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**

| | |
|---|---|
| Term | 24 months |
| Price | $ 1,850.00 |
| Coverage | Carvana    Vehicle Protection |

☒ **Gap Waiver or Gap Coverage**

| | |
|---|---|
| Term | 72 months |
| Price | $ 795.00 |
| Coverage | Gap Coverage |

☐ _____ N/A

| | |
|---|---|
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

_MS_                                      06/28/2020

By: Marsha Stanley                        Date

N/A                                       N/A

By:                                       Date

N/A                                       N/A

By:                                       Date

## Additional Terms of the Sales Agreement

**Definitions.** _"Contract"_ refers to this Retail Installment Contract and Security Agreement. The pronouns _"you"_ and _"your"_ refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns _"we"_, _"us"_ and _"our"_ refer to the Seller and any entity to which it may transfer this Contract. _"Vehicle"_ means each motor vehicle described in the _Description of Property_ section. _"Property"_ means the Vehicle and all other property described in the _Description of Property_ and _Additional Protections_ sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the _Description of Property_ section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The _"Total Sale Price"_ is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the _Truth-In-Lending Disclosure_ assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Dishonored Checks.** If you try to pay any portion of an amount you owe under this Contract with a check that is dishonored, you agree to pay a collection fee of $30, plus any fees charged to us by any financial institution as a result of this dishonor, after our written demand to you for payment of these amounts.

**Governing Law and Interpretation.** This Contract is governed by the law of Arkansas and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

◆ You fail to perform any obligation that you have undertaken in this Contract.

◆ We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs, reasonable attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract, to the extent permitted by law.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the rate described in the _Payment_ section until paid in full.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

DocuSign Envelope ID: CD985C78-D7FE-4488-91A1-05F47E309806

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

◆ You must pay this Contract even if someone else has also signed it.

◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

◆ We may release any security and you will still be obligated to pay this Contract.

◆ If we give up any of our rights, it will not affect your duty to pay this Contract.

◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

◆ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

◆ You agree not to remove the Property from the U.S. without our prior written consent.

◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

◆ You will pay all taxes and assessments on the Property as they become due.

◆ You will notify us with reasonable promptness of any loss or damage to the Property.

◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately unless we notify you otherwise. We may, at our option, require that you pay this amount as a balloon payment at the end of the Contract or extend the maturity date of the Contract. If we do, you agree to make any required balloon payment or to any extended maturity date. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

**Creditor-Placed Insurance Notice.** You are giving us a security interest in the Property described in this Contract. You are required to maintain insurance on the Property to protect our interest. If you fail to provide us with evidence of such insurance, we may place insurance to protect our interest. You will pay for the costs of any creditor-placed insurance.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

N/A _____          N/A _____
**By:**                                              **Date**
Signature of Third Party Owner (NOT the Buyer)

*[This area intentionally left blank.]*

DocuSign Envelope ID: CD985C78-D7FE-4488-91A1-05F47E309806

**THIS IS A COPY**
This is a copy view of the Authoritative Copy held
by the designated custodian

☒ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

*M S*

By: Marsha Stanley                     06/28/2020
                                        Date

_____N/A_____         _____N/A_____
By:                                      Date

_____N/A_____         _____N/A_____
By:                                      Date

**Notice to Buyer.** (1) Do not sign this Contract before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this Contract.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

*M S*

By:  Marsha Stanley                    06/28/2020
                                        Date

_____N/A_____         _____N/A_____
By:                                      Date

_____N/A_____         _____N/A_____
By:                                      Date

**Seller**

By:  CARVANA, LLC                      06/28/2020
                                        Date

**Assignment.** This Contract and Security Agreement is assigned to
N/A
_____ ,
the Assignee, phone _____N/A_____ . This assignment is made
under the terms of a separate agreement made between the Seller and Assignee.
☐   This Assignment is made with recourse.
**Seller**

N/A
By:                                      Date



Retail Installment Contract-AR Not for use in transactions secured by a dwelling.
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2015

RSSIMVLFLZAR 10/10/2015
Page of 5

DocuSign Envelope ID: CD985C78-D7FE-4488-91A1-05F47E309806

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

# BUYERS GUIDE

**IMPORTANT:** Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing. Keep this form.

| Audi | A4 | 2015 | WAUBFAFL2FN023304 |
|------|-----|------|--------------------|
| VEHICLE MAKE | MODEL | YEAR | VEHICLE IDENTIFICATION NUMBER (VIN) |

## WARRANTIES FOR THIS VEHICLE:

☐ **IMPLIED WARRANTIES ONLY**

The dealer doesn't make any promises to fix things that need repair when you buy the vehicle or afterward. But *implied warranties* under your state's laws may give you some rights to have the dealer take care of serious problems that were not apparent when you bought the vehicle.

☒ **DEALER WARRANTY**

☐ FULL WARRANTY.

☒ LIMITED WARRANTY. The dealer will pay _100_ % of the labor and _100_ % of the parts for the covered systems that fail during the warranty period.* Ask the dealer for a copy of the warranty, and for any documents that explain warranty coverage, exclusions, and the dealer's repair obligations. *Implied warranties* under your state's laws may give you additional rights.

**SYSTEMS COVERED:**

| | DURATION: |
|---|---|
| Gasoline Engine | 100 days or 4,189 miles whichever comes first |
| Transaxle | 100 days or 4,189 miles whichever comes first |
| Driveaxle | 100 days or 4,189 miles whichever comes first |
| Air Conditioning | 100 days or 4,189 miles whichever comes first |

\* A $50 deductible is applies to each repair visit

## NON-DEALER WARRANTIES FOR THIS VEHICLE:

☒ MANUFACTURER'S WARRANTY STILL APPLIES. The manufacturer's original warranty has not expired on some components of the vehicle.

☐ MANUFACTURER'S USED VEHICLE WARRANTY APPLIES.

☐ OTHER USED VEHICLE WARRANTY APPLIES.

Ask the dealer for a copy of the warranty document and an explanation of warranty coverage, exclusions, and repair obligations.

☒ SERVICE CONTRACT. A service contract on this vehicle is available for an extra charge. Ask for details about coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of your purchase of this vehicle, *implied warranties* under your state's laws may give you additional rights.

**ASK THE DEALER IF YOUR MECHANIC CAN INSPECT THE VEHICLE ON OR OFF THE LOT.**

**OBTAIN A VEHICLE HISTORY REPORT AND CHECK FOR OPEN SAFETY RECALLS.** For information on how to obtain a vehicle history report, visit ftc.gov/usedcars. To check for open safety recalls, visit safercar.gov. You will need the vehicle identification number (VIN) shown above to make the best use of the resources on these sites.

**SEE OTHER SIDE for important additional information, including a list of major defects that may occur in used motor vehicles.**

**Si el concesionario gestiona la venta en español, pídale una copia de la Guía del Comprador en español.**

DocuSign Envelope ID: CD985C78-D7FE-4488-91A1-05F47E309806

**THIS IS A COPY**
This is a copy view of the Authoritative Copy held
by the designated custodian

Here is a list of some major defects that may occur in used vehicles.

**Frame & Body**
Frame-cracks. corrective welds, or rusted
    through
Dog tracks—bent or twisted frame

**Engine**
Oil leakage, excluding normal seepage
Cracked block or head
Belts missing or inoperable
Knocks or misses related to camshaft
    lifters and push rods
Abnormal exhaust discharge

**Transmission & Drive Shaft**
Improper fluid level or leakage, excluding
    normal seepage
Cracked or damaged case which is visible
Abnormal noise or vibration caused by faulty
    transmission or drive shaft
Improper shifting or functioning in any gear
Manual clutch slips or chatters

**Differential**
Improper fluid level or leakeage, excluding
    normal seepage
Cracked of damaged housing which is
    visible
Abnormal noise or vibration caused by faulty
    differential

**Cooling System**
Leakage including radiator
Improperly functioning water pump

**Electrical System**
Battery leakage
Improperly functioning alternator, generator,
    battery, or starter

**Fuel System**
Visible leakage

**Inoperable Accessories**
Gauges or warning devices
Air conditioner
Heater & Defroster

**Brake System**
Failure warning light broken
Pedal not firm under pressure (DOT spec.)
Not enough pedal reserve (DOT spec.)
Does not stop vehicle in straight line
    (DOT spec.)
Hoses damaged
Drum or rotor too thin (Mfgr. Specs)
Lining or pad thickness less than 1/32 inch
Power unit not operating or leaking
Structural or mechanical parts damaged

**Air Bags**

**Steering System**
Too much free play at steering wheel
    (DOT specs.)
Free play in linkage more than 1/4 inch
Steering gear binds or jams
Front wheels aligned improperly
    (DOT specs.)
Power unit belts cracked or slipping
Power unit fluid level improper

**Suspension System**
Ball joint seals damaged
Structural parts bent or damaged
Stabilizer bar disconnected
Spring broken
Shock absorber mounting loose
Rubber bushings damaged or missing
Radius rod damaged or missing
Shock absorber leaking or functioning
    improperly

**Tires**
Tread depth less than 2/32 inch
Sizes mismatched
Visible damage

**Wheels**
Visible cracks, damage or repairs
Mounting bolts loose or missing

**Exhaust System**
Leakage

**Catalytic Converter**



DEALER NAME
 CARVANA, LLC

ADDRESS
 7201 APPLING FARMS PKWY          MEMPHIS TN 38133-4738

TELEPHONE                          EMAIL
 1-800-333-4554                    DL-CarvanaPhoenixAdvocate@carvana.com

FOR COMPLAINTS AFTER SALE, CONTACT:
Carvana Customer Advocates at: 1.800.333.4554 or
1930 W Rio Salado Pkwy, Tempe, AZ 85281

**IMPORTANT:** The information on this form is part of any contract to buy this vehicle. Removing this label before
consumer purchase (except for purpose of test-driving) violates federal law (16 C.F.R. 455).